UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY HYUNDAI, INC. d/b/a                    Case No. 23-10214
FELDMAN HYUNDAI OF NEW HUDSON
and GENESIS OF NEW HUDSON,                     F. Kay Behm
                                               United States District Judge
        Plaintiff,

v.

HYUNDAI MOTOR AMERICA, INC. and
GENESIS MOTOR AMERICA, LLC,

        Defendants.
_____ /

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS COUNTS V, VI, AND VII OF PLAINTIFF'S
<u>FIRST AMENDED COMPLAINT (ECF No. 20)</u>**

This case is before the court on Defendant Genesis Motor America, LLC's

("GMA") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6)

and 9(b).  (ECF No. 20).  Plaintiff Liberty Hyundai, Inc. ("Liberty") filed their initial

complaint against GMA and Hyundai Motor America, Inc. ("HMA") on January 27,

2023.  (ECF No. 1).[1]  On April 3, 2023, Defendant GMA filed a motion to dismiss

Counts V and VI of Liberty's complaint.  (ECF No. 8).  In response, the court

entered an order giving Liberty the opportunity to file an amended complaint

_____

[1] This case was originally before District Judge Laurie J. Michelson, but was reassigned to
the undersigned on February 6, 2023.

1

pursuant to Federal Rule of Civil Procedure 15(a)(2).  (ECF No. 14).  Liberty filed

their first amended complaint ("FAC") on April 24, 2023.  (ECF No. 18).  As such,

the court denied GMA's motion to dismiss as moot on April 25, 2023.  (ECF No.

19).

Liberty's FAC raises seven claims against GMA and HMA, including for

violations of Michigan's Motor Vehicle Franchise Act, Mich. Comp. Laws §

445.1574(1)(e) and (r) (Counts I, II, III), breach of contract (Count IV, VII),

promissory estoppel (Count V), and fraud in the inducement (Count VI).  *Id.*  GMA

filed an updated motion to dismiss on May 8, 2023, seeking to dismiss Counts V,

VI and VII of the FAC.[2]  (ECF No. 20).  Liberty filed their response on May 30, 2023,

and GMA filed their reply on June 13, 2023.  (ECF Nos. 24, 26).  The court held a

hearing on this motion on October 18, 2023, and both parties participated in oral

argument.  (*See* ECF No. 28).  For the reasons stated below, the court **GRANTS IN

PART** and **DENIES IN PART** GMA's motion.

## I.   FACTUAL BACKGROUND

This case stems from the denial of Liberty's plan to relocate their Genesis

dealership to a location in Novi, Michigan.  Liberty currently operates new motor

---

[2] This motion was brought by Defendant GMA alone, as the relevant claims (V, VI, and VII) are specifically directed at GMA, not HMA.

vehicle dealerships selling both Hyundai and Genesis-brand motor vehicles in New Hudson, Michigan.  (ECF No. 18, PageID.121).  HMA is the "sole authorized distributor in the United States of Hyundai branded automobiles to a nationwide network of franchised Hyundai dealers."  *Id.*, PageID.122.  Similarly, GMA is the "sole authorized distributor in the United States of Genesis branded automobiles to a nationwide network of franchised Genesis dealers."  *Id.*, PageID.123.  GMA is a subsidiary of HMA.  *Id.*  Liberty began their business relationship with HMA in approximately 2009, when they executed the Hyundai Dealer Sales and Service Agreement (the "Hyundai Agreement"), allowing them to sell and service Hyundai-branded vehicles at their dealership.  (ECF No. 18-2, "Hyundai Motor America Dealer Sales and Service Agreement").  In 2018, Liberty executed a second agreement (the "Genesis Agreement") with GMA, allowing them to also sell and service Genesis-branded vehicles.  (ECF No. 18-3, "Genesis Motor America Dealer Sales and Service Agreement").

Initially, HMA and GMA allowed individual dealers, like Liberty, to operate both Hyundai and Genesis dealerships from the same facility.  (ECF No. 24, PageID.235).  However, they eventually "announce[d] plans for dealers to begin operating independent, exclusive facilities for each of the Hyundai and Genesis line-makes."  *Id*.  These programs were known as the "Accelerate" and "Keystone"

3

programs.  *Id*.  Liberty submitted their Accelerate and Keystone program

enrollment forms on March 6, 2020, and "indicat[ed] [their] desire to operate

independent, exclusive facilities" for each brand.  *Id.*  Because Liberty's existing

facilities in New Hudson were too small to accommodate the program

requirements for both Hyundai and Genesis, they sought to open a new Genesis

showroom in Novi, Michigan.  (ECF No. 18, PageID.134).  When Liberty told Paul

Lamb, a representative for HMA and GMA, about their plan, he allegedly

responded that it was an "idea worth discussing."  *Id*.

On October 31, 2020, Plaintiff signed a Genesis Keystone Retailer

Participation Agreement ("Keystone Agreement").  *Id.*  This agreement set out a

number of program rules, including that "the dealer must '[o]btain approval from

GMA for the relocation of the Genesis Facility.'"  (ECF No. 24, PageID.236; *see also*

ECF No. 18-6).  At that time, Liberty also operated a Kia dealership in Novi,

Michigan, and identified that location as a suitable alternative for relocating its

Genesis dealership.  (ECF No. 18, PageID.135).  They also found and acquired a

parcel of land in Novi where they planned to relocate their Kia dealership in order

to make room for the new Genesis dealership.  *Id.*  In September 2021, Liberty

sent Paul Lamb the "site plans and current building footprints for the potential

Genesis relocation to the current Kia of Novi site."  *Id.*  Liberty later met with both

Paul Lamb and HMA and GMA's General Manager for National Dealer Network Development, Chad Filiault, to review the potential relocation of New Hudson Genesis to the proposed Novi location. *Id*. After this meeting, Liberty claims they followed up with Paul Lamb stating they "needed to know whether HMA and GMA would approve the relocation because [they] had timelines to meet to qualify for monies under Accelerate and Keystone."[3] *Id.*, PageID.135-36. Lamb responded, "Novi location is great" and inquired as to "whether [Liberty] would agree to meet both Accelerate and Keystone's facility image requirements at the relocation site as well as at the New Hudson site where both dealerships currently operated." *Id.*, PageID.136. GMA also inquired as to whether any neighboring Genesis dealers could protest the proposed move under Michigan's Dealer Act.[4] *Id*. Liberty paid for a consultant to perform a distance survey, which indicated that no dealer would have the right to protest. (ECF No. 24, PageID.237) ("counsel for Plaintiff sent GMA the required results with a legal analysis that

---

[3] Pursuant to the Keystone agreement, "if a participating dealer commenced construction of a Genesis-exclusive facility by June 30, 2022, and completed that construction by June 30, 2024, it would also be paid a percentage of the MSRP for each new Genesis-brand vehicle it sold." (ECF No. 20, PageID.209; ECF No. 18-5).

[4] The Michigan Dealer Act, Mich. Comp. Laws § 445.1576, allows a neighboring dealer of the same line-make to protest a relocation that proposes to place a competing dealership within nine miles of the protesting dealer's location.

stated the relocation of the Genesis New Hudson franchise to Novi is permissible and will not be protestable.").

Liberty alleges the parties continued to stay in contact over the following months and, in February 2022, Paul Lamb indicated through a text message: "you[r] package should be moving forward for the Novi proposal." (ECF No. 18, PageID.137). A few days later, he followed up and stated, "the central region sent the relocation request in for Novi early this week." *Id.* As a result, Liberty "expended significant funds on preparing site surveys, engineering and architectural designs, and other required reports for the potential relocation approval." *Id*. However, in March 2022, HMA and GMA "indicated, for the first time that they would not be approving [Liberty's] relocation request." *Id.*, PageID.138. Liberty alleges they never received a written denial of their request. *Id.* Rather, several weeks later, Liberty received a "Notice of Genesis Dealership Relocation and Hyundai Dealership Establishment Notice" which notified them that Genesis of Dearborn planned to relocate their dealership into Commerce Township, Michigan. (ECF No. 24-1). This Commerce Township location would be within the Novi market area, frustrating Liberty's plans to relocate their dealership. (ECF No. 24, PageID.238). Liberty argues "it is evident that Defendants were in discussions with Genesis of Dearborn, regarding relocation of

6

its dealership to Commerce Township, at the same time they were in communications with Plaintiff about its relocation to Novi." (ECF No. 18, PageID.139). Likewise, Liberty argues these actions were taken in bad faith and they have suffered, and will continue to suffer, material damages as a result. *Id.*, PageID.142.

## II.   RELEVANT LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the nonmoving party pleads facts

7

that "allow[] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At the motion to dismiss stage, the court does not consider whether the factual allegations are probably true; instead the court must accept the factual allegations as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

B.    Federal Rule of Civil Procedure 9(b)

Where, as here, a plaintiff raises allegations of fraud, their pleadings are

subject to the heightened standard included in Fed. R. Civ. P. 9(b).  Specifically,

"[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A 9(b) motion,

however, does not "mute the general principles set out in Rule 8," which require

only a "short and plain statement of the claim," including "simple, concise, and

direct allegations."  Fed. R. Civ. P. 8(a), (d); *see also Michaels Bldg. Co. v.*

*Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988) (citing *Credit & Finance Corp.,*

*Ltd. v. Warner & Swasey Co.*, 638 F.2d 563, 566 (2d Cir. 1981)).  As such, to survive

a motion to dismiss under Rule 9(b), a party must plead enough "to provide a

defendant fair notice of the substance of a plaintiff's claim in order that the

defendant may prepare a responsive pleading."  *Id.* (citations omitted).  This

includes, at a minimum, the "who, what, when, where, and how" of the alleged

fraud and sufficient detail about the fraudulent scheme and the resulting injury.

*Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011).

III.   **ANALYSIS**

GMA's motion seeks the dismissal of Counts V, VI, and VII of the FAC.

Specifically, GMA argues: (a) Plaintiff fails to allege a promise, the core element of

9

a promissory estoppel claim, (b) Plaintiff fails to allege a representation that could

support a claim for fraud in the inducement, (c) Plaintiff fails to allege any facts

under which the court could infer justifiable reliance, which forms an element of

both Plaintiff's promissory estoppel and fraudulent inducement claims, (d)

Plaintiff cannot allege promissory estoppel given their contract with GMA, and (e)

Plaintiff fails to allege the specific contractual provision breached by GMA.  The

court will address the arguments relevant to each of the three counts in turn.

    A.    <u>Promissory Estoppel (Count V)</u>

GMA's motion first argues that Count V fails to allege a plausible claim for

promissory estoppel because it does not allege the existence of a valid promise.

(ECF No. 20, PageID.213).  Under Michigan law, the doctrine of promissory

estoppel states: "[a] promise which the promisor should reasonably expect to

induce action or forbearance on the part of the promisee or a third person and

which does induce such action or forbearance is binding if injustice can be

avoided only by enforcement of the promise."  *State Bank of Standish v. Curry*,

442 Mich. 76, 83 (1993) (citing Restatement (Second) of Contracts § 90 (1981)).

The first step of this test is to determine whether there was, in fact, a valid

promise.  The doctrine of promissory estoppel defines a promise as "a

manifestation of intention to act or refrain from acting in a specified way, so

made as to justify a promise in understanding that a commitment has been made." *Id.* (citing Restatement (Second) of Contracts § 2 (1981)).  Because Michigan courts cautiously apply promissory estoppel, they have held that not just any "promise" will satisfy the test.  *Avertest, LLC*, *v. Livingston Cnty., Michigan*, No. 20-1858, 2021 WL 3702196, at *6 (6th Cir. Aug. 20, 2021).  A promise must be both "definite and clear" and a party's reliance on it "must be reasonable."  *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008) (citing *Ypsilanti Twp. V. Gen. Motors Corp.*, 201 Mich. App. 128, 134 (1993)).  "[S]tatements that are indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct cannot serve as the foundation for an actionable reliance."  *Farrow Grp., Inc. v. Detroit Land Bank Auth.*, No. 351138, 2021 WL 70649, at *5 (Mich. Ct. App. Jan. 7, 2021) (citing *Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 227 (2019) (quoting *State Bank of Standish*, 442 Mich. at 85-86)).  To determine whether a promise exists, the court must look to the totality of the circumstances surrounding the relationship or transaction and "objectively evaluate…the parties' words, actions, and relationship."  *Id.* (citations omitted).  Michigan courts "will not enforce vague or general promises that require speculation about the promiser's actual duties under the promise."  *Avertest, LLC,* 2021 WL 3702196, at *6.

The FAC bases Count V for promissory estoppel in part on GMA's alleged promise that they "supported [Liberty's] desired relocation and would approve [Liberty's] request to relocate as long as it satisfied GMA's related guidelines." (ECF No. 18, PageID.148). Specifically, the FAC lists the following allegations, among others:

> 100. Plaintiff notified GMA of its desire to relocate the Genesis dealership.
>
> 101. GMA indicated it supported the desired relocation and would approve Plaintiff's request to relocate as long as it satisfied GMA's related guidelines.
>
> …
>
> 103. GMA knew or should have reasonably expected that its indicated support of the relocation would induce Plaintiff to take steps to make that relocation a reality, including purchasing additional real estate, expending related funds on architectural and engineering designs, site surveys and related requirements, as detailed *supra.*
>
> 104. Plaintiff in fact followed through on its indicated plans, expended those funds, and took steps in reasonable reliance on GMA's support to formalize the relocation.
>
> 105. Additionally, GMA indicated that it would treat the relocation in accordance with its policies, on its merits, and in the normal course.
>
> …
>
> 107. Due to GMA's actions in issuing the Notice and failing to handle Plaintiff's request in the normal course, Plaintiff can no longer receive the benefit of the steps it took in reliance on GMA's support and has suffered damages.

108. In order to avoid injustice, GMA's promise to support the relocation and to treat the relocation in accordance with its policies and in the normal course must be enforced.

(ECF No. 18, PageID.147-48).

Considering all of the relevant circumstances surrounding the parties'

relationship, GMA did not make a definite and clear promise to approve Liberty's

relocation request.  It is clear from the Keystone Agreement that Liberty needed

to first get GMA's affirmative approval of their site plans before moving forward.

(ECF No. 18-6) ("In order to qualify for support payments Retailer will be required

to...obtain approval from GMA for the relocation of the Genesis facility.).  Liberty

admits this affirmative approval was never given.  (ECF No. 24, PageID.243)

("GMA never actually approved Plaintiff's relocation request, but it also never

formally denied it.").  The statements made by HMA and GMA's representatives –

the proposal was an "idea worth discussing," the "Novi location is great," "you[r]

package should be moving forward for the Novi proposal," and "the central region

sent the relocation request in for Novi early this week" – do not indicate a definite

and clear promise to approve their proposal.  *See Zaremba Equip., Inc.*, 280 Mich.

App. at 41.  Rather, these statements align more with those "made in the course

of preliminary negotiations" which are typically found to "lack[] the degree of

certainty necessary" to find a promise.  *State Bank of Standish*, 442 Mich. at 86

13

(citing Jay M. Feinman, *Promissory Estoppel and Judicial Method*, 97 Harv. L. Rev. 678, 690 (1984)).  While GMA may have "seemingly approved of and supported Plaintiff's relocation plans" their statements above did not do so "plain[ly] and unambiguous[ly]."  *See Lakin v. Bloomin' Brands, Inc.*, No. 17-CV-13088, 2018 WL 488955, at *3 (E.D. Mich. Jan. 19, 2018) (finding the first element of promissory estoppel was satisfied where the defendant "emailed the Plaintiffs a plain and unambiguous statement that Gallagher would be paying [plaintiff]'s medical costs.").

Liberty relies on *State Bank of Standish v. Curry* to argue that sufficient evidence of a definite promise can exist, even without affirmative approval, "*when the promise is viewed in light of the surrounding facts and circumstances of the parties' relationship*."  (ECF No. 24, PageID.244) (emphasis in original).  In *State Bank of Standish*, the plaintiffs were dairy farmers who had obtained a line of credit from State Bank of Standish each year for more than 10 years.  442 Mich. at 79.  The parties had a relatively informal process for obtaining their loans: "[e]arly each year, Mr. and Mrs. Curry would visit the bank to discuss the upcoming spring loan and crop plan with the bank's officers.  The bank would complete the required paperwork and…simply call the Currys back to the bank in March or April to sign the promissory note."  *Id.*  When the Bank declined to offer

them a line of credit in the eleventh year, they sued under a theory of promissory estoppel. *Id.* at 78. The court agreed that it could be "found from the evidence that the bank had promised to make the loan, the terms of which could be objectively determined from the nature of the transaction, and the ten-year history of the customary loan practices between the parties." *Id.* at 92. Unlike in *State Bank of Standish*, however, the parties in this case did not have a history of conducting these types of transactions. While their negotiations allegedly spanned a two-year time period, Liberty does not allege that they had any reason to believe GMA would treat these contract negotiations in the same way as prior negotiations, because there were no such negotiations. Additionally, the bank in *State Bank of Standish* stated that "there was no reason to worry about their future in the dairy business because *the bank would support them*," which creates a much more specific and definite promise than the language used by GMA. *See id.* at 80 (emphasis added).

A recent case from the Sixth Circuit, *Avertest, LLC v. Livingston Cnty., Michigan*,[5] further supports the court's finding that Liberty has not alleged the

---

[5] *Avertest* is an unpublished decision and, therefore, is not binding on this court. However, unpublished opinions may still be considered for their "persuasive value." *Peguese v. PNC Bank, N.A.*, 306 F.R.D. 540, 544 (E.D. Mich. 2015) (citing *United States v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009); *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007)).

existence of a promise.  2021 WL 3702196, at *2.  In *Avertest*, a drug and alcohol testing company was negotiating a contract to provide services to the defendant county.  *Id.*  Avertest was selected as a finalist and identified a building they could lease to provide their services, located one mile from the county courthouse.  *Id.* Avertest argues they "did not want to sign a lease, however, without further assurances from the county" and emailed the defendant's representative asking "[b]efore executing the lease, we need approval on the location and the contract from Livingston County."  *Id.*  The defendant's representative responded: "[p]er our conversation today, we are approving the new location and have attached the resolution to show that it was approved and a contract will follow in the near future."  *Id.*  Plaintiff argued this email constituted a promise, which they relied upon in signing the lease.  *Id.* at *6.  However, the Sixth Circuit held that, under Michigan law, the "suggestion that the county would send a contract in the future did not include 'the required specificity' for a reasonable jury to find that the county made an actionable promise" because the "material terms of the agreement are lacking."  *Id.* (citing *State Bank of Standish*, 442 Mich. at 85).  In other words, even though the email stated, "we are approving the new location," the fact that it suggested "a contract will follow in the near future" and did not indicate any terms of that contract made it insufficient to form a promise.  *Id.*

16

Similarly, in this case, even though Liberty sought assurances from GMA that their site choice would be approved, the response from Lamb indicating "Novi location is great" and inquiring as to "whether [Liberty] would agree to meet both Accelerate and Keystone's facility image requirements…" does not provide any of the specific terms of their approval or indicate that it was done so in accordance with the explicit terms of the Keystone Agreement.  In fact, these statements are even less definite than the statements made by the representative in *Avertest*, who affirmatively stated "we are approving the new location."  *Id.*

In addition to their claim that GMA promised to approve their relocation so long as they complied with the related guidelines, Liberty also alleges GMA promised to "treat the relocation in accordance with its policies, on its merits, and in the normal course."  (ECF No. 18, PageID.148).  However, Liberty has not indicated when or where GMA clearly and definitively promised they would treat Liberty's relocation "in accordance with its policies, on its merits, and in the normal course."  As such, this alleged promise also does not meet the standard to state a claim for promissory estoppel.

Even viewing the facts in the light most favorable to Liberty, they have failed to sufficiently allege the existence of a plain and unambiguous promise, a fundamental element of a claim for promissory estoppel.  Without a sufficient

promise, it is not necessary to determine whether it was reasonable for Liberty to rely upon GMA's statements.  Additionally, is not necessary to determine whether Liberty may assert a claim for breach of contract and a claim for promissory estoppel in the alternative.  Count V must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

       B.    <u>Count VI: Fraud in the Inducement</u>

       GMA next claims that Count VI of the FAC fails to sufficiently plead a claim for fraud in the inducement given the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b).  Under Michigan law, a claim for fraud in the inducement is actionable when "a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon."  *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 276 Mich. App. 146, 161 (2007) (citations omitted).  To state a claim, a party must show:

> (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that [it] was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Id.* A claim of fraudulent misrepresentation must be based on a statement relating to a past or an existing fact, not a future promise. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976).

In the FAC, Liberty again bases their claim on "GMA's indicated support for the relocation," and argues "GMA knew that its indication of support for the relocation would result in Plaintiff taking actions in reliance on that representation," and Liberty did, in fact, take such actions. (ECF No. 18, PageID.149). Liberty further argues GMA falsely "indicated that it would treat the relocation in accordance with its policies, on its merits, and in the normal course," but could not have done so because "it was already working to approve the relocation of Genesis of Dearborn." *Id.* Similar to their argument for the dismissal of Count V, GMA alleges that Liberty has again failed to sufficiently show that their statements "amount[ed] to a representation that GMA had approved or would approve Plaintiff's proposed Genesis relocation." (ECF No. 20, PageID.216). The court agrees. As detailed above, the facts alleged by Liberty do not sufficiently show that GMA affirmatively represented or misrepresented that they approved Liberty's relocation plans. Liberty correctly states that "fraud need not been determined solely by words, but may be established by **actions and inferences arising from them.**" (ECF No. 24, PageID.249-50) (citing *Foreman v.*

19

*Foreman*, 266 Mich. App. 132, 143 (2005)) (emphasis in original).  However, again,

GMA's actions do not objectively show that they approved Liberty's relocation

request.  Liberty has also failed to show that GMA falsely told Liberty they did, or

falsely planned to, "treat the relocation in accordance with its policies, on its

merits, and in the normal course."  (ECF No. 18, PageID.148).  Likewise, even

viewing the facts in the light most favorable to Liberty, without sufficient

allegations of a material misrepresentation, their claim for fraud in the

inducement cannot stand under the Fed. R. Civ. P. 9(b) pleading standard.  Count

VI must also be dismissed.

     C.    <u>Count VII: Breach of Keystone Agreement</u>

     Finally, GMA argues that Liberty has failed to state a claim for breach of

contract as it relates to the Keystone Agreement.  (ECF No. 20, PageID.218).  In

order to state a claim for breach of contract under Michigan law, a party must

establish: "(1) there was a contract (2) which the other party breached (3) thereby

resulting in damages to the party claiming breach."  *Miller-Davis Co. v. Ahrens*

*Const., Inc.*, 495 Mich. 161, 178 (2014).  Notably, Liberty does not allege that GMA

breached any of the express provisions of the Keystone Agreement.  Rather, they

argue:

122. The Keystone Agreement requires the Retailer to complete certain milestones and achieve approval from GMA for the relocation of the Genesis Facility in order to qualify for support payments from GMA.

123. However, GMA did not approve Plaintiff's relocation of its Genesis Facility, nor did it consider Plaintiff's request on the merits thereby frustrating Plaintiff's attempts to complete the requirements of the Keystone Agreement.

124. As a result GMA has breached its Keystone Agreement with Plaintiff by actively working to prevent Plaintiff from achieving its obligations under the Keystone Agreement.

(ECF No. 18, PageID.150-51).

Because Liberty does not allege the breach of any explicit contractual terms, their sole remaining argument under this count is for the breach of the duty of good faith and fair dealing.  Specifically, they argue:

125. Additionally, the duty of good faith and fair dealing is implied in every contract and requires parties to conform to the standards of good faith and fair dealing in order to protect reasonable contractual and commercial expectations.

126. Defendants' actions and inactions described *supra* also constitute a breach of the implied covenant of good faith and fair dealing in the Keystone Agreement in that Plaintiff's expectations have not been met and GMA actively thwarted Plaintiff's attempts to meet its obligations.

*Id.*, PageID.151.  "The covenant of good faith and fair dealing is an implied

promise contained in every contract 'that neither party shall do anything which

will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Rodgers v. JP Morgan Chase Bank NA*, 315 Mich. App. 301, 310-11 (2016) (citing *Hammond v. United of Oakland, Inc.*, 193 Mich. App. 146, 151-52 (1992) (quoting *Fortune v. Nat'l Cash Register Co.*, 373 Mass 96, 104 (1977))).  Michigan does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing.  *Id.* (citations omitted). However, courts applying Michigan law have allowed claims to proceed when they involve a "contractual obligation [that] is tied to a condition and the only party with discretion to affect the condition after Closing is Defendant."  *Warren Prescriptions, Inc. v. Walgreen Co.*, No. 17-10520, 2018 WL 287951, at *2 (E.D. Mich. Jan 4, 2018).

In this case, Liberty argues that GMA had discretion to decide whether to approve Liberty's relocation and to treat Liberty's plans in accordance with its policies.  (ECF No. 24, PageID.254).  Further, "the manner in which GMA exercised that discretion (stringing Plaintiff along, negotiating with Genesis of Dearborn at the same time, making Plaintiff expend monies that GMA knew were unnecessary, and requesting a site survey just before Genesis of Dearborn's relocation) had the practical effect of preventing Plaintiff from fulfilling its obligations under the Keystone Agreement."  *Id.*, PageID.255.  Viewing the facts in

the light most favorable to Liberty, they have alleged enough to proceed on their

claim that GMA exercised their discretion under the Keystone Agreement to deny

Liberty's relocation plans in bad faith.  *See Warren Prescriptions, Inc.*, 2018 WL

287951, at *2; *Burkhardt v. City Nat'l Bank of Detroit*, 57 Mich. App. 649, 652

(1975) ("Where a party to a contract makes the manner of its performance a

matter of its own discretion, the law does not hesitate to imply the proviso that

such discretion be exercised honestly and in good faith."); *Lowe's Home Centers,*

*Inc. v. LL & 127, LLC*, 147 Fed. Appx. 516, 523-24 (6th Cir. 2005) ("[W]here the

manner of performance under a contract is left to the discretion of a party, that

party may breach the contract by exercising its discretion in bad faith.").  GMA's

motion to dismiss Count VII is **DENIED.**

## IV.  CONCLUSION

Considering the facts of this case in the light most favorable to Liberty, they

have failed to sufficiently state a claim for promissory estoppel and fraud in the

inducement.  Liberty has, however, sufficiently pleaded breach of contract as it

relates to the Keystone Agreement based on the theory of breach of the duty of

good faith and fair dealing.  As such, GMA's motion to dismiss is **GRANTED IN**

**PART** and **DENIED IN PART** and Counts V and VI are dismissed with prejudice.

This does not close the case, as Counts I-IV and VII remain.

**SO ORDERED**.

Date: December 21, 2023                    <u>s/F. Kay Behm</u>
                                           F. Kay Behm
                                           United States District Judge